UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DOREEN SCHOWALTER,

                     **Plaintiff**

      v.                             **Case No. 1:13-cv-249-HJW**

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA, et al,

                  **Defendants**

<u>ORDER</u>

This matter is before the Court upon the plaintiff's complaint seeking reinstatement of her long-term disability ("LTD") benefits pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et. seq. The parties have filed cross-motions for judgment on the administrative record (doc. nos. 19, 20).[1] The Magistrate Judge entered a Report and Recommendation ("R&R"), recommending that Prudential's decision to terminate benefits was "arbitrary and capricious," that plaintiff's motion be granted, and that defendants' motion be denied (doc. no. 27). The defendants filed objections (doc. no. 30), and plaintiff responded (doc. no. 31). On October 23, 2014, this Court held a hearing at which respective counsel presented oral arguments. Upon *de novo* review of the

---

[1] Although each motion is labeled as a "motion for summary judgment on the administrative record," the Sixth Circuit Court of Appeals has explained that "the concept of summary judgment is inapposite to the adjudication of an ERISA action." <u>Wilkins v. Baptist Healthcare Sys., Inc.</u>, 150 F.3d 609, 619 (6th Cir. 1998); <u>Buchanan v. Aetna Life Ins. Co.</u>, 179 Fed. Appx. 304, 306 (6th Cir. 2006). "The Sixth Circuit has directed that claims regarding the denial of ERISA benefits are to be resolved using motions for judgment on the administrative record." <u>Niswonger v. Liberty Life Assur. Co.</u>, 2013 WL 5566661, *1 (S.D.Ohio).

record, including the objections, the Court will <u>modify</u> the R&R and <u>remand</u> to the Plan administrator for reconsideration (i.e., for expansion of the record and "full and fair review"), for the following reasons:

## I.   Standard of Review

### A. "Arbitrary and Capricious"

The parties agree that the Plan Administrator ("Prudential") has the discretionary authority to determine eligibility for LTD benefits (Plan § 5.14) and that the "arbitrary and capricious" standard of review applies. Under such standard, the Court considers whether the administrative decision was the result of a deliberate, principled, reasoning process and is supported by substantial evidence in the administrative record. <u>Balmert v. Reliance Stand. Life Ins. Co</u>., 601 F.3d 497, 501 (6th Cir. 2010). Where the plan administrator offers a reasonable explanation based upon the evidence for its decision to terminate benefits, the decision is not "arbitrary and capricious." <u>Bagsby v. Central States, SE and SW Areas Pens. Fund</u>, 162 F.3d 424, 428 (6th Cir. 1998). In reviewing an administrative decision, the court is confined to a review of the administrative record. <u>Farhner v. United Transp. Union Disc. Income Prot. Prog.</u>, 645 F.3d 338, 343 (6th Cir. 2011).

### B. Potential Conflict of Interest

The dual role of an insurer in the administration and payment of claims is considered as a factor, but does not alter the "arbitrary and capricious" standard of review. <u>Met. Life Ins. Co. v. Glenn</u>, 554 U.S. 105, 128 S. Ct. 2343, 2349-50 (2008). Prior to February 1, 2010, Sara Lee both administered and paid Plan benefits, but

as of February 1, 2010, Sara Lee paid Plan benefits for disability claims that were made prior to that date while Prudential administered the Plan (Mead Aff. ¶¶ 3-5). The Magistrate Judge correctly noted these facts and recommended that "there is no conflict of interest in this case" (doc. no. 27 at 15, fn. 3). The Magistrate Judge is correct that where the claims administrator proceeds under a contract to provide administrative services and is not the Plan insurer (i.e., is not responsible for actual payment of claims), such third-party administrator generally does not operate under a conflict of interest that would affect the court's deferential review of the termination of LTD benefits.

On the present record, however, the Court has some reservations about holding that "no conflict" exists. The evidence suggests the possibility that Prudential may have some "conflict of interest." While Prudential was not responsible for paying claims under the Plan, it may still have an incentive to deny claims, depending on the terms of its contract with its client and the method of evaluating its services. The administrative record reflects that Sara Lee, after paying Mrs. Schowalter's LTD benefits for fifteen years, was taken over by another entity ("Hillshire"), which hired Prudential to administer the Plan as of February 2010. Sara Lee/Hillshire sent Prudential a "spreadsheet" which apparently triggered immediate review of Mrs. Schowalter's file on February 10, 2010. Although the case notes make numerous references to the spreadsheet, Prudential did not include in the record the spreadsheet and the criteria that triggered review of her file.

3

On the present record, the Court is not persuaded that Prudential is entirely free of any conflict of interest. Given the references to "takeover" of the claim and immediate review (and given that such review initially proceeded even though Prudential had received no medical records from its new client and did not even have a job description for plaintiff), the record suggests the possibility that Prudential had an interest in "shedding" Sara Lee's former employees who were receiving LTD benefits. Prudential may well have had an incentive to reduce its new client's monetary obligations and thereby obtain a good evaluation for itself. If Prudential, as claims administrator, benefitted (directly or indirectly) from its decision to deny LTD benefits, then such conflict would be a relevant factor to consider. Given the limited record presently before the Court, the record does not conclusively establish, and Court does not find, any conflict of interest at this time. Upon remand, the parties may further develop the record by including the spreadsheet and any relevant information about how Sara Lee/Hillshire evaluates Prudential's performance as administrator under the contract. In other words, expansion of the record may include information as to whether Sara Lee/Hillshire provided any "incentives" to Prudential to terminate claims. See, e.g., Finley v. Hewlett-Packard Co. Employee Ben. Org. Income Protection Plan, 379 F.3d 1168, 11 (10th Cir. 2004) (finding no cognizable conflict of interest where the company funding the plan had paid the administrator by "flat rate" and where there was no evidence that the administrator had received financial or evaluative incentives for denying claims).

4

## II. Background

The Magistrate Judge has already discussed the record in considerable detail. In summary, the administrative record ("AR") reflects the following: Plaintiff Doreen Schowalter (born 4/4/1953) worked for Sara Lee as a "Promotion and Marketing Manager" for approximately ten years, beginning in 1985. In 1992, she underwent successful triple bypass heart surgery. Several years later, on June 2, 1995, she stopped working due to cardiac-related problems, including coronary artery disease ("CAD"), post-coronary artery bypass graft with multiple saphenous vein graph failure, diabetes mellitus type II, and hypertension. Under Sara Lee's Plan, an employee is considered totally disabled:

> "if, due to sickness or bodily injury, he or she is unable to perform each and all of the material duties pertaining to his or her occupation, and is not engaged in any occupation or employment for wage or profit for which he or she is reasonably qualified by education, training or experience." (Plan § 2.6).

After 24 months, the Plan's definition of total disability becomes more stringent and is defined as:

> "the continuous inability of the Covered Employee, due to sickness or bodily injury, to engage in each and every occupation or employment for wage or profit that he or she is reasonably qualified to do or may become reasonably qualified to do by education, training or experience without regard to (i) whether such occupation or employment exists in the geographic area in which the Covered Employee resides, (ii) whether a specific vacancy in such occupation or employment exists, (iii) whether a Covered Employee is likely to be hired if he or she applied for such occupation or employment, and (iv) whether the earnings of such occupation or employment are comparable to those earned by a Covered Employee before his or her disability." (Plan § 2.6).

5

Sara Lee initially granted plaintiff's claim for disability benefits. As is common in such cases, plaintiff sought, and was granted, disability benefits from Social Security. The record does not reflect whether Sara Lee reviewed the claim after 24 months under the Plan's second definition, but in any event, Sara Lee paid plaintiff LTD benefits for the next fifteen years. On February 1, 2010 Prudential took over as Plan administrator.

On February 10, 2010, Prudential began reviewing the plaintiff's file (AR 540, log of case notes indicating the "reason" for review was "Sara Lee Takeover" and that information was "obtained from Sara Lee Takeover spreadsheet"). Although plaintiff had been determined by the Social Security administration in 1995 to be "disabled" within the meaning of the Social Security Act, and although Prudential's case notes refer to her federal disability benefits, the administrative record does not contain the actual decision and its reasoning (see AR 546 noting plaintiff "is receiving SSDI primary which is coded to claim;'" AR 548 "SSDI Prim.& Fam. approved since 1995"). Other notes indicate "Objective: FSSDB ended 6-30-22010" which appears to be a reference to Mrs. Schowalter's letter to Prudential advising that her twin children would no longer be receiving Social Security benefits as of July 2010 (AR 416-418, 534.[2]

Additionally, Prudential did not have an actual job description of plaintiff's former job (AR 544). Upon Prudential's request, plaintiff submitted her own

---

[2] References in Prudential's case notes to "FSS" and/or "FSSDB" presumably mean "federal Social Security disability benefits." The case notes contain many other acronyms, such as RTW for "return to work," R&L for "restrictions and limitations," and OOW for "out of work."

description of her past job duties, which Prudential accepted. Prudential's notes also indicate that it did not receive any medical records for the initial claim from Sara Lee (AR 540, notes on 02/10/2010 indicating "no medical records received from prior carrier"; AR 543 "This is a first appeal ... no medical data was provided w/takeover claim;" AR 546 "no medical data was provided w/takeover claim").

The Plan provides that the administrator may request proof of continuing disability from a claimant. Prudential requested that plaintiff submit medical documentation of her current disability. Mrs. Schowalter complied, and submitted recent records from her cardiologists at the Ohio Heart Vascular Center, Dr. Gerald Palermo, M.D. (internal medicine), and Dr. Nelson Rodriguez, M.D. (psychiatrist). Based on the limited information before it, Prudential determined that plaintiff did not meet the Plan's second definition of "total disability" and terminated her LTD benefits, effective August 3, 2010 (AR 471). Prudential indicated that "based on the medical information in the file, you do not have any current restrictions and limitations that would prevent you from returning to work" (AR 472-474).

Plaintiff administratively appealed. Her cardiologist advised Prudential by letter that plaintiff had "a long-standing history of coronary artery disease, hypertension, diabetes and peripheral vascular disease" and that she had undergone heart surgery for double stent placement (angioplasty) in 2006-2007. He also indicated that a 2010 Carotid Duplex Evaluation reflected that plaintiff had partial (20-49%) artery blockages and that plaintiff continued to have symptoms of chest discomfort and episodes of dyspnea (shortness of breath) with exertional

7

activity. The records indicate the plaintiff takes numerous medications which help with symptoms, but that she cannot tolerate beta blocker therapy due to depression. Plaintiff submitted additional medical documentation indicating that a May 2009 heart stress test -- echocardiography ("ECG") -- reflected that her heart was "abnormal with myocardial ischemia in the basal inferior wall consistent with known coronary anatomy and blockages" (AR 298). Plaintiff indicated that, in addition to her history of multiple heart surgeries in 1995, 2006, and 2007, she has diabetes, high blood pressure, arthritis, worsening eyesight from glaucoma (for which she had surgery), and a history of major depression since 2006. She alleged that she was constantly fatigued, in pain, anxious, and prone to sadness. Plaintiff's psychiatric records indicate that she underwent a series of electro-shock ("ECT") sessions and has had ongoing therapy sessions for depression and anxiety.

Prudential sought a records review by a qualified physician (AR 169-170). The reviewing physician, Dr. Mark Eaton, M.D., board-certified in Internal Medicine with a sub-specialty in Cardiovascular Disease, agreed that plaintiff had coronary artery disease, diabetes mellitus, and high blood pressure, but opined that plaintiff was not restricted "in her ability to sit, stand, walk, lift, carry, or perform upper extremity activities (beyond the confines of a light level)" and that she had "no restrictions on reaching or use of a keyboard" (AR 235). He concluded that "from a cardiovascular standpoint," the medical findings did not preclude plaintiff from working full-time at the "light" level (AR 236).

8

Given plaintiff's new allegations of worsening eyesight due to glaucoma, Prudential obtained review by a second physician, Dr. Joseph Goetz, M.D. board-certified in Ophthalmology. He conducted a file review for Prudential on February 9, 2011 (AR 240). He indicated that after plaintiff's eye surgery, the objective medical evidence showed that plaintiff retained "good central vision" and "vision field" (AR 240, examination on 11/22/2010 reflecting 20/30 vision in right eye and 20/25 vision in left eye). He opined that plaintiff had no resulting restrictions regarding her eyesight.

A third physician hired by Prudential, Dr. Paul T. Hogya, M.D., board certified in occupational medicine, personally examined plaintiff and reviewed the existing medical file (AR 148). He concluded that plaintiff had good control of her hypertension and diabetes, that she had little functional impairment from her cardiac and cardiac-related problems, and that the objective medical evidence did not support the extent of her self-reported functional limitations at that time (AR 150-151). Despite the results of plaintiff's 2009 stress test and her obesity, he opined that plaintiff had no exertional restrictions for sitting, standing, walking. He also opined that plaintiff could use her hands for gripping, pinching, squeezing, writing or fine manipulation, and thus, was capable of operating a telephone, headset, keyboard, and computer mouse (AR 151).

Prudential denied the plaintiff's administrative appeal. On October 18, 2011, plaintiff sought reconsideration and submitted additional documentation from her treating psychiatrist, Dr. Nelson Rodriguez, indicating that plaintiff had a history of

"major depressive disorder." He also noted that plaintiff suffered from coronary artery disease ("CAD") and diabetes. In his letter, he stated his opinion that plaintiff was "unable to hold any job" (AR 104, letter submitted May 11, 2012). Plaintiff also submitted documentation from medical examiner Dr. Fritzhand, who examined plaintiff on March 7, 2012. His comprehensive report indicated that plaintiff suffered from heart disease, vascular disease, "intermittent chest pain," diabetes, and was morbidly obese (i.e., 5'1" in height and weighing over 200 lbs.) (AR 119-122). He noted that plaintiff walked with a "slow limping antalgic gait," although she showed no evidence of muscle weakness or atrophy and was "comfortable sitting" for the examination (AR 109-110).[3] He found that although her "level of intellectual functioning" was normal, in light of her history of major depression, "her daily activities would be restricted ... by her mental status" (AR 111, 121). Dr. Fritzhand concluded that plaintiff had "severe functional impairment" and was "incapable of performing remunerative employment" (AR 107-110, 123).

On June 28, 2012, Prudential determined that plaintiff "should have been capable of returning to work in her regular occupation as of August 1, 2010" (AR 501-504). Prudential determined that plaintiff was not disabled under the applicable second definition of the Plan and denied reconsideration (AR 543).

III. The Parties' Arguments

Plaintiff argues that the medical record does not reflect that her heart

---

[3] The record reflects that plaintiff had injured her foot, but does not indicate that her limp was permanent.

condition has "improved" since 1995, and that if anything, the evidence shows that her health problems, including her coronary artery disease, have "worsened" (doc. no. 19 at 11-12). She argues that Prudential ignored this and chose to emphasize the fact that she had not required recent hospitalizations or emergency room visits (Id. at 13). Plaintiff asserts that she suffers today from the same previous heart ailments as when she was found totally disabled by Sara Lee, and that since then, she has developed additional heart problems and other physical and mental ailments. She points out that a stress test on September 21, 2010 confirmed previous abnormal findings detected in 2007 when she had heart surgery for stent placement (AR 23-24). She points out that she "has a demonstrated history of chest pains and shortness of breath" and that "these symptoms are correlated to objective findings in tests that found her heart to be abnormal with her being susceptible to dyspnea upon over-exertion" (doc. no. 20 at 15). Her treating physicians and psychiatrists have opined that she is severely impaired and precluded from working. Her consulting medical examiner agreed with their assessments. Plaintiff asserts that Prudential's decision to terminate her LTD benefits, especially after fifteen years and without evidence of improvement in her condition, is "arbitrary and capricious."

Prudential responds that its decision to terminate plaintiff's LTD benefits was based on various file reviews by qualified physicians and the opinion of its occupational medical examiner (Dr. Hogya) (doc. no. 20 at 11). Prudential asserts that the "ultimate decision to uphold the denial of continued disability benefits

11

was based upon multiple medical professional determinations that Ms. Schowalter could perform work tasks, including returning to her regular occupation" (Id. at 12).[4] Prudential asserts that plaintiff "should be able to work in a sedentary position that requires use of a computer and a telephone" and that none of her medical restrictions would prevent her from performing a "desk job that requires the use of a computer and telephone" (Id. at 11, citing AR 171). Prudential rejected several opinions of plaintiff's treating physicians as "conclusory" and relied on its own reviewers and examiner.[5]

## IV. The Report and Recommendation

The Magistrate Judge observed that Sara Lee had previously determined that plaintiff was disabled under the Plan. The Magistrate Judge indicated that plaintiff had presented objective evidence of ongoing heart problems from her treating physicians, that the medical evidence showed that plaintiff's condition was "stable" rather than "successfully treated" or "improved," that Prudential had "cherry-picked" from Dr. Fritzhand's report, and that plaintiff was "presumptively" entitled to continuation of LTD benefits (doc. no. 27 at 33-34). The Magistrate Judge recommended that Prudential's decision to terminate plaintiff's LTD benefits was "arbitrary and capricious" and that a "retroactive award of LTD

---

[4] The record does not reflect that Sara Lee's successor (Hillshire) has offered Mrs. Schowalter the opportunity to return to her previous job.

[5] The Court observes that these reviews reflect little or no analysis of whether Mrs. Schowalter could sustain work activities on a full-time basis in light of the medical evidence reflecting ischemia and dyspnea on exertion, or whether her major depression was episodic and how it might impair her ability to work.

benefits wrongfully withheld and reinstatement of plaintiff's LTD benefits is the appropriate remedy" (Id. at 35).

## V. The Objections

Prudential objects that the Magistrate Judge: 1) improperly placed the burden on Prudential to show "improvement" in plaintiff's condition before terminating her benefits (doc. no. 30 at 6-8); 2) improperly conflated the terms "condition" and "disability" (Id. at 8-9); 3) did not adequately consider the two different definitions of disability under the Plan (Id. at 9-10); 4) improperly weighed evidence (Id. at 10-15); and 5) that even if its objections are not sustained, the proper remedy would be a remand to the Plan Administrator for further review and explanation, rather than an immediate award of benefits (Id. at 15-16).

## VI. Discussion

### A. No Burden to Show Improvement

Prudential correctly argues that it has no burden to show "improvement" in plaintiff's condition. See, e.g., Kirkham v. Prudential Ins. Co. of Am., 2011 WL 1898944, *4 (J. Bowman) (administrator is not required to present evidence that plaintiff's "condition has improved in order to show that the termination of plaintiff's [LTD] benefits was neither arbitrary nor capricious"), adopted by 2011 WL 1885669 (S.D.Ohio) (J. Bertelsman); Bennetts v. AT&T Integrated Disability Service Center, 2014 WL 2607371, *9 (E.D. Mich.) ("Because there was a change in the standard by which Bennett's disability was evaluated, his argument that the termination of benefits was arbitrary and capricious simply because there was no

13

improvement in his condition must be rejected."); <u>Cochran v. Hartford Life and Accident Ins. Co</u>., 2010 WL 259047, *8 fn.4 (E.D. Mich.) (same); <u>Wilkens v. P & G Disb. Benefit Plan</u>, 2013 WL 3989584, *7-8 (rejecting plaintiff's contention that the administrator had to show improvement in plaintiff's condition and explaining that "the question for the Court is whether the plan administrator, in light of all the evidence, had a rational basis for concluding that [plaintiff] was not disabled at the time of the new decision").

In suggesting that Prudential was required to show improvement in plaintiff's condition, the Magistrate Judge quoted <u>Morris v. Am. Elec. Power LTD Plan</u>, 399 Fed.Appx. 978, 984 (6th Cir. 2010) for the proposition that "it is reasonable to require a plan administrator who determines that a participant meets the definition of 'disabled,' then reverses course and declares that same participant 'not disabled' to have a reason for the change; to do otherwise would be the very definition of arbitrary and capricious" (doc. no. 27 at 21-22). The Magistrate Judge also cited <u>Kramer v. Paul Revere Life Ins. Co</u>., 571 F.3d 499, 507 (6th Cir. 2009). Those cases, however, do not directly apply here because they involved terminations *under the same standard*. In the present case, the termination of benefits occurred under a different standard, i.e. the second definition of disability.

Prudential points out that the Magistrate Judge's quotation of <u>Morris</u> stops short of its holding in the very next sentence that "it does not follow, however, either logically or from our decision in <u>Kramer</u>, that the explanation [for the

termination of benefits] must be that the plan administrator has acquired new evidence demonstrating that the participant's medical condition has improved" (doc. no. 30 at 6, quoting <u>Morris</u>, 399 Fed. Appx. at 984). To the extent the R&R incompletely quoted the holding of <u>Morris</u> and suggested that Prudential had to show "improvement" in plaintiff's condition, the objection is sustained.

   B. Conflating Terms: "Condition" and "Disability"

   Next, Prudential argues that the R&R "is founded in large part on the mistaken belief that a medical condition that might lead to a disability is a disability in and of itself" (doc. no. 30 at 9). Prudential acknowledges that plaintiff has been diagnosed with various health conditions, but asserts that these conditions did not result in totally disabling functional limitations. See, e.g., <u>Zenadoccio v. BAE Sys. Unfunded Welfare Benefit Plan</u>, 2013 WL 1327122, at *15 (S.D.Ohio) (emphasizing that a "diagnosis is not dispositive ... [the claimant] must be disabled under the Plan from performing [work]"); <u>Eastin v. Reliance Standard Life Ins. Co</u>., 2013 WL 4648736, *10 (E.D.Ky.) (agreeing with plan administrator that the claimant was improperly conflating "diagnosis" with "disability," and emphasizing that the claimant's "functional capacity is key").

   Although the basic assertion that "a diagnosis is not the same as a disability" is correct, Prudential over-states this rather generalized objection. The Court does not agree that the Magistrate Judge's extensive analysis "conflated" these concepts. For example, the Magistrate Judge emphasizes that plaintiff's treating physician, Dr. Gerald Palermo, M.D., wrote a second letter dated August

15

31, 2011, indicating that plaintiff "is totally disabled from performing any job function due to her underlying medical conditions" (doc. no. 27 at 18). The record reflects that the Magistrate Judge appropriately recognized that plaintiff's functional abilities (despite her conditions) were the main issue. This objection lacks merit.

### C. First and Second Definitions Under the Plan

With respect to Prudential's objection regarding different definitions, the Court observes that the issue is <u>not</u> whether Sara Lee properly granted disability benefits under the first definition in 1995. That particular determination is not before the Court. The issue here is whether, upon review of the evidence as a whole, the current administrator's 2010 decision under the second definition of disability was "a reasoned conclusion based on substantial evidence." See, e.g., <u>Wilkens v. P&G Disability Benefit Plan</u>, 2013 WL 3989584, 7-8 (S.D. Ohio) (J. Black). To the extent the analysis in the R&R did not sufficiently distinguish between the two definitions, the objection is sustained.

### D. Alleged Improper "Weighing of Evidence" from the Treating Physicians

Prudential further objects that the Magistrate Judge improperly found that Prudential had "rejected the opinions of plaintiff's treating cardiologist and treating physician … without providing adequate reasons for its determination," when in fact, adequate reasons were stated in the final decision.

The Magistrate Judge correctly recommended that Prudential was obligated to explain why it was rejecting the treating opinions (doc. no. 27 at 33). The record

16

reflects that Prudential discounted those opinions for the stated reason that they were "conclusory." Prudential correctly asserts that it is not bound by conclusory opinions of "total disability." Prudential chose to rely on other evidence of record (i.e. its own reviewing physicians) indicating plaintiff could perform sedentary work. Prudential contends that the Magistrate Judge, in findings Prudential's analysis to be arbitrary and capricious, improperly "weighed evidence" by allegedly giving "undue weight" to the findings and conclusions of plaintiff's treating physicians (doc. no. 30 at 11). Prudential urges that it properly "considered all of the findings and opinions of her treating physicians, Drs. Palermo and Kereiakes" and rationally explained why it did not accept their "short, conclusory and unexplained subjective opinions" (Id.).

The record does not reflect that Prudential's physicians reviewed plaintiff's medical documentation from her original claim or the SSA determination of disability, which would have included the opinions and findings of her treating physicians. "A plan administrator's failure to consider an award of benefits by the Social Security Administration ("SSA") is not per se arbitrary, but it is nonetheless a consideration in the court's review." Cook v. Prudential Ins. Co. of Am., 494 Fed.Appx. 599, 607-608 (6th Cir. 2012); see also, Bennett, 514 F.3d at 553 (faulting the plan administrator for failing "to explain why it reached a conclusion contrary to that of the SSA"); Glenn, 461 F.3d at 669 (finding plan administrator's failure to consider the SSA's total-disability determination a "significant factor"); Hurse v. Hartford Life & Accident Ins. Co., 77 Fed.Appx. 310, 317 (6th Cir. 2003) (observing

17

that SSA determinations "should carry significant weight" if "there is evidence that the plan administrator urged or aided the claimant in his pursuit of social security benefits"); <u>Borys v. Met. Life Ins. Co.</u>, 2005 WL 1037469 (S.D.Ohio 2005) (J. Marbley) (same); <u>Geiger v. Pfizer, Inc.</u>, 918 F.Supp.2d 697, 706-07 (S.D.Ohio 2013) (J. Smith) ("the findings of the Social Security Administration should have at least been noticed by CIGNA–NY during its review of Plaintiff's claim for long term disability benefits"); <u>Napier v. Hartford Ins. Co</u>., 282 F.Supp.2d 531 (E.D.Ky. 2003) (Hartford "erroneously ignored" the SSA's determination of complete disability after it "actively encouraged" the plaintiff to seek SSDB). While the SSDB determination is not determinative, it would be relevant information that was not furnished to reviewers or put in the administrative record.

Additionally, although Prudential criticizes the subsequent letters from plaintiff's treating physicians (indicating their opinion that the plaintiff remained totally disabled in 2010) as "conclusory," this does not take into account the fact that the administrative record should include the prior written records and opinions of the treating physicians regarding Mrs. Schowalter's initial claim. Although Prudential based its review on current information, plaintiff's history of serious medical problems was not fully considered. [6]

Under ERISA, a Plan must accord every participant a "full and fair review by

---

[6] The Magistrate Judge pointed out that Prudential's assertion in its final denial letter that plaintiff's conditions (cardiac disease, diabetes, hypertension and depression) had been "treated successfully" was not accurate (doc. no. 27 at 24, AR 440). The phrase "treated successfully" suggests that a condition has been cured, whereas the medical evidence more accurately indicated that plaintiff's conditions were medically stable with ongoing treatment and medication.

the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). Such review shall take "into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." 29 C.F.R. § 2560.503–1(h)(2)(iv). Prudential did not do this. Prudential offers no explanation for its failure to include relevant documents in the administrative record, including the medical documentation for Mrs. Schowalter's initial claim and any Social Security disability determinations that the Plan obligated her to seek (and which she did successfully obtain). Even on administrative appeal, the case notes indicate: "This is a first appeal of an LTD termination. This is a takeover claim. No medical data was provided w/takeover claim" (AR 543). While plaintiff has a duty to provide medical documentation of ongoing disability in 2010, Prudential may not simply ignore the entire original case file consisting of medical information already provided by plaintiff. Prudential has not indicated that it ever informed plaintiff that it did not have the initial file from Sara Lee. This may be one reason why the treating physician's opinion letters were rather short - some of them had previously submitted documentation to Sara Lee or to Social Security in 1995 (or were aware of such history). Based on their medical treatment of Mrs. Schowalter, various treating physicians (including plaintiff's long-time cardiologist) reiterated in 2010 that based on their long-term treatment of Mrs. Schowalter, they believed she remained disabled.

"For purposes of the requirement that a participant in an Employee

Retirement Income Security Act plan have an opportunity for a full and fair review of a benefit denial, a 'full and fair review' means knowing what evidence the decision-maker relied on, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his or her decision." Federal Procedure, Lawyers Ed., § 61:67.

"The claims procedure of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures ... provide for a review *that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.*" American Jurisprudence, Second Ed., § 454 (italics added). Here, Prudential and its reviewing physicians did not review the original disability determination under the Plan, the content of any Social Security determinations regarding Mrs. Schowalter, or the medical documentation submitted with her original claim. In fact, the record does not confirm whether plaintiff is still receiving SSDB, and respective counsel did not clarify this at the hearing. While Mrs. Schowalter's remaining functional abilities in 2010 were the most significant issue in considering whether she was disabled under the second definition of the Plan, her medical history in the initial claim file would have been relevant to the reviewing physicians, especially for context and accuracy.

20

A Plan's failure to provide relevant records may be unreasonable. See Spangler v. Lockheed Martin Energy Systems, Inc., 313 F.3d 356, 362 (6th Cir. 2002) (plan should have provided "all medical records relevant to [the claimant's] capacity to work" to the consulting reviewer; the limited documentation provided by the plan to the consulting reviewer rendered the final decision "arbitrary and capricious"). Given the record, the Court is not persuaded that plaintiff has been afforded "full and fair" review in this case. While some of Prudential's objections have merit, the Court agrees with the Magistrate Judge's ultimate recommendation that Prudential's decision to terminate benefits was "arbitrary and capricious."

### E. Remand

Finally, Prudential objects that remand, rather than an immediate award of benefits, would be proper (doc. no. 30 at 15, citing Elliott v. Met. Life, 473 F.3d 613 (6th Cir. 2006) (holding that where the problem is with the integrity of decision-making process, rather than that a claimant was denied benefits to which she was clearly entitled, the proper remedy is remand for full and fair review). For the reasons already discussed, remand for full and fair review is appropriate here. See Geiger, 918 F.Supp.2d at 706-07 ("On remand, the parties are encouraged to make sure the Administrative Record includes the Social Security information and this information must be considered by Defendants"). An immediate award of benefits is not warranted at this time.

Accordingly, the Court SUSTAINS in part and OVERRULES in part the defendant's Objections (doc. no. 30); MODIFIES the Magistrate Judge's R&R (doc.

no. 27); **GRANTS in part and DENIES in part** the plaintiff's "Motion for Judgment on the Administrative Record" (doc. no. 19); **DENIES** the defendant's "Motion for Judgment on the Administrative Record" (doc. no. 20); **REVERSES** the denial of benefits; and **REMANDS** this matter to the administrator for full and fair review.

IT IS SO ORDERED.

s/Herman J. Weber
Herman J. Weber, Senior Judge
United States District Court

22